1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JOON PARK, an individual,    )
                                         )
            Plaintiff,    )
                                         )
v.                                      )
                                       )
CAS ENTERPRISES, INC.,    )
an Iowa Corporation d/b/a    )
KREG TOOL COMPANY,    )
                                       )
            Defendant.    )
                                       )

Civil No.:  08-cv-0385 DMS/NLS

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

1

**<u>PRELIMINARY INSTRUCTIONS</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **PRELIMINARY INSTRUCTION NO. _**
2    **SUMMARY OF CONTENTIONS**
3         To help you follow the evidence, I will now give you a summary of the positions of the
4    parties.
5         The parties in this case are Joon Park ("Park") and CAS Enterprises, Inc. d/b/a Kreg Tool
6    Company ("Kreg Tool").  The case involves two United States patents obtained by Park.  The
7    patents involved in this case are United States Patent Numbers 6,637,988, 7,134,814 and
8    7,374,373 which list Park as the inventor. For convenience, the parties and I will often refer to
9    these two patents by the last three digits of each patent number -- the '988, '814 and '373 patents.
10        Park contends that Kreg Tool has infringed Claims 1, 12 and 20 of the '988 patent and
11   Claims 1, 5, 6 and 9 of the '814 patent.
12        Kreg Tool denies that it has infringed claims 1, 12 and 20 of the '988 patent and 1, 5, 6
13   and 9 of the '814 patent and argues that claims 1, 12 and 20 of the '988 patent, claims 1, 2, 4, 5, 6,
14   9, 10 and 11 of the '814 patent and claim 5 of the '373 patent are invalid.  Your job will be to
15   decide whether claims 1, 12 and 20 of the '988 patent and 1, 5, 6 and 9 of the '814 patent have
16   been infringed.  You will also decide whether claims 1, 12 and 20 of the '988 patent, claims 1, 2,
17   4, 5, 6, 9, 10 and 11 of the '814 patent and claim 5 of the '373 patent are invalid as alleged by
18   Kreg Tool.
19        If you decide that any claim of either patent has been infringed and is not invalid, you will
20   then need to decide the money damages to be awarded to Park to compensate him for the
21   infringement. You will also need to make a finding as to whether the infringement was willful. If
22   you decide that any infringement was willful, that decision should not affect any damage award
23   you give. I will take willfulness into account later.
24
25
26   **Authorities:**
27   N.D. Calif. Model Patent Jury Inst. A3 (11/29/07)
28   _____ Given        _____ Modified       _____ Denied

PLAINTIFF JURY INSTRUCTIONS                    08 CV 00385 DMS (NLS) - Page 3

**PRELIMINARY INSTRUCTION NO. _**

**PATENTS AT ISSUE**

The court should show the jury the patent at issue and point out the parts including the specification, drawings and claims including the claims at issue. The court could at this point also hand out its construction of any claim terms and the glossary.

To assist you in following the evidence in ths case, the parties have prepared a juror book for each of you.  It has been placed on your chair.  If you will open the book you will see the three patents -- the '988, '814 and '373 patents.

Looking at the '988 patent you will see that there is a cover page providing information about the inventor, the filing date of the application that matured into the patent, the prior art references considered by the patent examiner and one of the figures.  Then there are three sheets of drawings with eight figures.  That is followed by a three page description, each page having two columns and line numbers that are often referred to, and finally the claims that are individually numbered.

The '814 patent has the same format.

The '373 patent has the same format.

Following the three patents are two pages of my constructions of the claim language limitations or elements.

Next there is a Glossary for many of the terms in my instructions.

**Authorities:**

N.D. Calif. Model Patent Jury Inst. A2 (11/29/07)

_____ Given

_____ Modified

_____ Denied

PLAINTIFF JURY INSTRUCTIONS                                       08 CV 00385 DMS (NLS) - Page 4

1

**PRELIMINARY INSTRUCTION NO. _**

2

**STIPULATIONS OF FACT**

3

       The parties have agreed to certain facts that will be read to you.  You should therefore treat

4

these facts as having been proved:

5

       STIPULATED FACTS:

6

       The Kreg Tool Model K3 contains "clamping structure" as that term has been construed

7

by the Court in Claims 1 and 12 of the '988 patent and Claim 1 and 5 of the '814 patent.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Authorities:**

25

9th Cir. Civ. Jury Inst. 2.2 (2007) (modified)

26

_____ Given

27

_____ Modified

28

_____ Denied

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **FINAL INSTRUCTIONS**

1
2

# FINAL INSTRUCTION NO. _
## SUMMARY OF CONTENTIONS

3        To help you follow the evidence, I will now give you a summary of the positions of the

4   parties.

5        The parties in this case are Joon Park ("Park") and CAS Enterprises, Inc. d/b/a Kreg Tool

6   Company ("Kreg Tool").  The case involves three United States patents obtained by Park.  The

7   patents involved in this case are United States Patent Numbers 6,637,988, 7,134,814 and

8   7,374,373 which list Park as the inventor. For convenience, the parties and I will often refer to

9   these two patents by the last three digits of each patent number -- the '988, '814 and '373 patents.

10       Park filed suit in this court seeking money damages and an injunction from Kreg Tool for

11  allegedly infringing the '988 and '814 patents by making, selling, and offering for sale a pocket

12  hole drilling jig called the K3.  Park contends that the K3 is covered by claims of the patents.

13       Kreg Tool denies that it has infringed any claims of either patent and argues that, in

14  addition, all the claims are invalid.  Additionally, Kreg Tool alleges that Claim 5 of the '373

15  patent is invalid.

16       Your job will be to decide whether claims of the '988 and '814 patents have been

17  infringed and whether those claims are invalid.  If you decide that any claim of either patent has

18  been infringed and is not invalid, you will then need to decide the money damages to be awarded

19  to Park to compensate him for the infringement. You will also need to make a finding as to

20  whether the infringement was willful. If you decide that any infringement was willful, that

21  decision should not affect any damage award you give. I will take willfulness into account later.

22       It is my job as judge to determine the meaning of any claim language that needs

23  interpretation. You must accept the meanings I give you and use them when you decide whether

24  any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you

25  the meanings of the following words and groups of words from the patent claims.

26  Interpretation of the '988 Patent Claims

27

28  As to claim 1, the following definitions apply:

PLAINTIFF JURY INSTRUCTIONS                    08 CV 00385 DMS (NLS) - Page 7

1    The term "base" is to be interpreted to mean "support structure on which other

2  components of the adjustable pocket drilling fixture are mounted."

3    *Note:*   This construction applies to the same term in all patents at issue.

4    The term "guide carrier" is to be interpreted to mean "a structure for carrying at least one

5  drill guide."

6    *Note:*   This construction applies to the same term in all patents at issue.

7    The phrase "clamping structure" is to be interpreted to mean "structure connecting said

8  clamp body and said base which causes clamping by moving the clamp body toward the base."

9    *Note:*   This construction applies to the same term in all patents at issue.

10    The phrase "clamp actuator" is to be interpreted to mean "an assembly or device that

11  activates the clamp, thereby causing the clamp body to move in a clamping direction toward the

12  base."

13    *Note:*   This construction governs the same term in '988 Patent's Claim 20 and in the

14  '814 Patent's Claim 5.

15    The phrase "slidably mounted" is to be interpreted to mean "mounted to or on a part along

16  which it slides."

17    *Note:*   This construction shall govern the same term in the '814 Patent's Claim 5.

18    The phrase "gaging structure" is to be interpreted to mean "a structure, located between

19  the guide carrier and the base, that determines the guide carrier's position, based on workpiece

20  thickness."

21    You should give the rest of the words in claim 1 their ordinary meaning in the context of

22  the patent specification and prosecution history.

23  As to claim 12, the following definitions apply:

24    The phrase "movably mounted" is to be interpreted to mean "mounted for constrained

25  movement," and specifically as applied to the language in claim 12 "movably mounted" is

26  interpreted to mean that the guide carrier is mounted for constrained movement in a direction

27  approximately parallel to the first and second clamping faces.

28    The phrase "measuring structure" is to be interpreted to be "a selectively positionable

1   structure located between the guide carrier and the base, which determines the guide carrier's

2   position based on workpiece thickness, so that the location of a pocket hole to be drilled in a

3   clamped workpiece can be selected."

4   You should give the rest of the words in claim 12 their ordinary meaning in the context of

5   the patent specification and prosecution history.

6   As to claim 20, the following definitions apply:

7   The phrase "on the same side" is to be interpreted to mean that "the clamp actuator and the

8   guide carrier are both located on one side of the plane defined by the base's clamp face, to allow a

9   user to perform clamping and drilling on only one side of the workpiece."

10   You should give the rest of the words in claim 20 their ordinary meaning in the context of

11   the patent specification and prosecution history.

12   **Interpretation of the '814 Patent Claims**

13   As to claim 1, the following definitions apply:

14   The phrase "movably mounted" is to be interpreted to mean "mounted for constrained

15   movement in a direction approximately perpendicular to the base's clamping face." Although the

16   term "movably mounted" is also included in claim 12 of the '988 patent, the meaning of the

17   phrase "movably mounted" is to be interpreted differently than the same term in claim 1 of the

18   '814 patent because for the purposes of this claim, the guide carrier is mounted to move "in a

19   substantially perpendicular direction."

20   You should give the rest of the words in claim 1 their ordinary meaning in the context of

21   the patent specification and prosecution history.

22   As to claim 2, the following definitions apply:

23   _____The phrase "upright structure" is to be interpreted to mean "a structure that stands

24   vertically or straight upward."

25   You should give the rest of the words in claim 2 their ordinary meaning in the context of

26   the patent specification and prosecution history.

27   As to claim 4, the following definitions apply:

28   The phrase "determining means" is to be interpreted as what is known as a "means plus

1   function" clause, which carries a special meaning.  I will provide you with instructions as to how

2   this phrase is to be interpreted in a separate instruction.

3         You should give the rest of the words in claim 4 their ordinary meaning in the context of

4   the patent specification and prosecution history.

5   As to claims 5 & 6, the following definitions apply:

6         The phrase "positioned at an opposite side" is to be interpreted to mean that the clamp

7   actuator is located on the side of the fixture opposite the clamp body, adjacent to the base.

8         You should give the rest of the words in claims 5 & 6 their ordinary meaning in the

9   context of the patent specification and prosecution history.

10  As to claim 11, the following definitions apply:

11        The phrase "slidably couple" is to be interpreted to mean "to join or link two parts that

12  slide along each other."

13        The phrase "quick engagement" is to be interpreted as what is known as a "means plus

14  function" clause, which carries a special meaning.  I will provide you with instructions as to how

15  this phrase is to be interpreted in a separate instruction.

16        You should give the rest of the words in claim 11 their ordinary meaning in the context of

17  the patent specification and prosecution history.

18        You should give the remaining terms of the asserted claims of the '988 patent and the '814

19  patent their ordinary, everyday meaning in the context of each patent's specification and

20  prosecution history.

21

22  **Interpretation of the '373 Patent Claims**

23        As to claim 5, the following definitions apply:

24        The phrase "first position" means "the drilling module's position at the beginning of the

25  drilling operation."

26        The phrase "second position" means "the drilling module's position at the end of the

27  drilling operation."

28        The term "actuator" means "an assembly or device that activates the drilling module to

1    move from the first position to the second position."

2         The phrase "slidably mounted" means "mounted on, and guided by, a part along which it

3    slides."

4         You should give the remaining terms in claim 5 of the '373 patent their ordinary, everyday

5    meaning in the context of each patent's specification and prosecution history.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    **Authorities:**

25    N.D. Calif. Model Patent Jury Inst. A3 (11/29/07)

26    _____ Given

27    _____ Modified

28    _____ Denied

1

2

**FINAL INSTRUCTION NO. _**

**OPEN-ENDED OR "COMPRISING" CLAIMS**

3      The beginning, or preamble, of Claims 1, 12 and 20 of the '988 patent and Claims 1, 5, 6

4   and 9 of the '814 patent uses the word "comprising." "Comprising" means "including" or

5   "containing but not limited to." That is, if you decide that Kreg Tool's Model K3 jig includes all

6   the requirements Park asserted in the claims, then the claims are infringed.

7      Even if the Model K3 includes additional components, these additional components would

8   not avoid infringement of Claims 1, 12 or 20 of the '988 patent or Claims 1, 5, 6 or 9 of the '814

9   patent.

10

11

12

13

14

15

16

17

18

19

20

21   **Authorities:**

22   AIPLA Model Patent Jury Instr. No. 3.4 (June 17, 2009)

23   *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007) (holding that

24   "comprised of" has the same open-ended meaning as "comprising."); *Genentech, Inc. v. Chiron*

25   *Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997).

26   _____ Given

27   _____ Modified

28   _____ Denied

1
2

**FINAL INSTRUCTION NO. _**

**INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

3   If you decide that Kreg Tool's Model K3 jig does not literally infringe an asserted patent

4   claim, you must then decide whether the jig infringes the asserted claim under what is called the

5   "doctrine of equivalents."

6   Under the doctrine of equivalents, the product can infringe an asserted patent claim if it

7   includes parts that are identical or equivalent to the requirements of the claim. If the product is

8   missing an identical or equivalent part to even one requirement of the asserted patent claim, the

9   product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision

10   under the doctrine of equivalents, you must look at each individual requirement of the asserted

11   patent claim and decide whether the product has either an identical or equivalent part to that

12   individual claim requirement.

13   A part of a product is equivalent to a requirement of an asserted claim if a person of

14   ordinary skill in the field would think that the differences between the part and the requirement

15   were not substantial as of the time of the alleged infringement.

16   One way to decide whether any difference between a requirement of an asserted claim and

17   a part of the product is not substantial is to consider whether, as of the time of the alleged

18   infringement, the part of the product performed substantially the same function, in substantially

19   the same way, to achieve substantially the same result as the requirement in the patent claim.

20   In deciding whether any difference between a claim requirement and the product is not

21   substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary

22   skill in the field would have known of the interchangeability of the part with the claimed

23   requirement. The known interchangeability between the claim requirement and the part of the

24   product is not necessary to find infringement under the doctrine of equivalents. However, known

25   interchangeability may support a conclusion that the difference between the part in the product

26   and the claim requirement is not substantial. The fact that a part of the product performs the same

27   function as the claim requirement is not, by itself, sufficient to show known interchangeability.

28   You may not use the doctrine of equivalents to find infringement if you find that Kreg

Tool's Model K3 jig is the same as what was in the prior art before the application for the '988 patent and/or the '814 patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.[1]

**Authorities:**

N.D. Calif. Model Patent Jury Inst. B.3.4 (11/29/07)

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Lande Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abramis Bioscience, Inc. v. Maybe Parma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

_____ Given

_____ Modified

_____ Denied

---

[1]     If this instruction is applicable in a given case, then the court should instruct the jury that if [alleged infringer] has offered evidence sufficient to show that the accused [product] [method] is in the prior art, the burden shifts to the [patent holder] to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art. *See Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999). November 29, 2007 14

**FINAL INSTRUCTION NO. _**

**WILLFUL INFRINGEMENT**

In this case, Park argues that Kreg Tool willfully infringed the '988 and '814 patents.

To prove willful infringement, Park must first persuade you that Kreg Tool infringed a valid claim in either of the '988 or '814 patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of the '988 or the '814 patents, Park must persuade you that it is highly probable that prior to the filing date of the complaint[2], Kreg Tool acted with reckless disregard of the claims of the Park '988 or '814 patents.

To demonstrate such reckless disregard, Park must satisfy a two-part test. The first part of the test is objective. Park must persuade you that Kreg Tool acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  The state of mind of Kreg Tool is not relevant to this inquiry. Rather, the appropriate inquiry is whether the defenses put forth by Kreg Tool, fail to raise any substantial question with regard to infringement or validity. Only if you conclude that the defenses fail to raise any substantial question with regard to infringement or validity do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of Kreg Tool.  Park must persuade you that Kreg Tool actually knew, or it was so obvious that Kreg Tool should have known, that its actions constituted infringement of a valid patent.

In deciding whether Kreg Tool acted with reckless disregard for Park's patents, you should consider all of the facts surrounding the alleged infringement including, but not limited to whether Kreg Tool acted in a manner consistent with the standards of commerce in the woodworking tool industry, whether Kreg Tool relied on a legal opinion and whether Kreg Tool intentionally copied a product of Park covered by the patent.

---

[2]     This bracketed language should ordinarily be included as the Federal Circuit has made clear that, in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. *In re Seagate Technology, LLC*, 2007 U.S. App. LEXIS 19768 (Fed. Cir. Aug. 20, 2007).

1    **Authorities:**

2    N.D. Calif. Model Patent Jury Inst. B.3.11 (11/29/07)

3    *35 U.S.C. § 284; In re Seagate Tech., LLC*, 2007 U.S. App. LEXIS 19768 (Fed. Cir. Aug. 20,

4    2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345

5    (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,

6    246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339,

7    1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc*., 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc.*

8    *v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

9    _____ Given

10   _____ Modified

11   _____ Denied

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF JURY INSTRUCTIONS                    08 CV 00385 DMS (NLS) - Page 16

1

**FINAL INSTRUCTION NO. _**

2

**ENABLEMENT**

3       Kreg Tool can meet its burden of proving that a patent claim is invalid by showing that the

4   patent does not contain a description of the claimed invention that is sufficiently full and clear to

5   enable a person of ordinary skill in the field to make and use the invention. This is known as the

6   enablement requirement.

7       The patent may be enabling even though it does not expressly state some information if a

8   person of ordinary skill in the field could make and use the invention without having to do

9   excessive experimentation. In determining whether excessive experimentation is required, you

10  may consider the following factors:

11          the scope of the claimed invention;

12          the amount of guidance presented in the patent;

13          the amount of experimentation necessary;

14          the time and cost of any necessary experimentation;

15          how routine any necessary experimentation is to a person having more than 5 years of

16          experience in the design, manufacture, sale or use of woodworking tools;

17          whether the patent discloses specific working examples of the claimed invention;

18          the nature and predictability of the field; and

19          the level of ordinary skill of a person having more than 5 years of experience in the design,

20          manufacture, sale or use of woodworking tools.

21       The question of whether a patent is enabling is judged as of the date the original

22  application for the patent was first filed.

23

24  Source:

25  Model Patent Jury Instructions for the Northern District of California, November 29, 2007

26  **Authorities:**

27  35 U.S.C. § 112(1); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003);

28  *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001);

1    *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re*

2    *Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. _**

**INVALIDITY – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Kreg Tool has proven that claims 1, 12 and 20 of the '988 patent or Claims 1, 2, 4, 5, 6, 9, 10, and 11 of the '814 patent and claim 5 of the '373 patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Kreg Tool must persuade you that it is highly probable that the claim is invalid.

If the invalidity defense is based on prior art already considered by the Patent Office, the burden of proof on the accused infringer increases, that is, the accused infringer has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

**Authorities:**

N.D. Calif. Model Patent Jury Inst. B.4.1 (11/29/07)

*Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed. Cir. 1984); *PowerOasis, Inc. v. T-Mobile, USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008); *Anderson Corp. v. Pella Corp.,*, 300 Fed.Appx. 893, 2008 WL 4927431 (C.A. Fed.).

_____ Given

_____ Modified

_____ Denied

1

2

**FINAL INSTRUCTION NO. _**

**ANTICIPATION**

3       A person cannot obtain a patent if someone else already has made an identical invention.

4   Simply put, the invention must be new. An invention that is not new or novel is said to be

5   "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not

6   entitled to patent protection. To prove anticipation, Kreg Tool must prove with clear and

7   convincing  evidence that the claimed invention is not new.

8       A patent claim is invalid if the claimed invention is not new. For the claim to be invalid

9   because it is not new, all of its requirements must have existed in a single device or method that

10  predates the claimed invention, or must have been described in a single previous publication or

11  patent that predates the claimed invention. In patent law, these previous devices, methods,

12  publications or patents are called "prior art references."  If a patent claim is not new we say it is

13  "anticipated" by a prior art reference.

14      In this case, Kreg Tool contends that claim 5 of the '814 patent and claim 5 of the '373

15  patent are anticipated.  First, Kreg Tool contends that the invention of Claim 5 of the '814 patent

16  was present in Kreg Tool's A2H pocket hole jig.  Finally, Kreg Tool contends that the invention

17  of claim 5 of the '373 patent was present in the Kreg Tool DB50.

18      To anticipate a claim, each and every element in the claim must be present in a single item

19  of prior art. You may not combine two or more items of prior art to prove anticipation. In

20  determining whether every one of the elements of the claimed invention is found in the prior art,

21  you should take into account what a person of ordinary skill in the art would have understood

22  from his or her examination of the particular publication, patent, or device.

23      In addition, in determining whether the single item of prior art anticipates a patent claim,

24  you should take into consideration not only what is expressly disclosed in the particular item of

25  prior art, publication, invention, patent, or device, but also what inherently resulted from its

26  practice. This is called "inherency." A party claiming inherency must prove it by clear and

27  convincing evidence. To establish inherency, the evidence must make clear that the prior art

28  necessarily resulted in the missing descriptive matter and that it would be so recognized by a

person of ordinary skill in the art at the time the patent application was filed.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to particular categories of prior art that Kreg Tool contends apply in this case. I will now instruct you about those additional requirements and what constitutes prior art in this case.

**Authorities:**

AIPLA Model Jury Inst. 6.0 (2008)

*Toro Co. v. Deere & Co.,* 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson,* 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.,* 190 F.3d 1342, 1346-1347 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988).

_____ Given

_____ Modified

_____ Denied

1
2

**FINAL INSTRUCTION NO. _**

**PRIOR ART DEFINED**

3      In this case, Kreg Tool contends the following patents and physical devices are prior art.

4      First, Kreg Tool contends that a Kreg Tool device called the A2H included a configuration

5 having an air cylinder mounted on the horizontal portion of the base with a control valve mounted

6 on the vertical fixed guide carrier of the base ("Specially Configured A2H") is prior art, that is,

7 was offered for sale, sold or was publicly known or used prior to the filing date of the '988 patent,

8 November 15, 2001.  Park contends that Kreg Tool has not established that the Specially

9 Configured A2H is prior art.  Kreg Tool must establish that the Specially Configured A2H is prior

10 art by clear and convincing evidence which cannot be based on oral testimony alone; it must be

11 corroborated by documents (including photographs) or a physical device created

12 contemporaneously with the date of the alleged prior art event.

13      Second, Park admits that the Kreg Tool Rocket and K2000 are prior art.

14      Third, Kreg Tool contends that Kreg Tool Patent Nos. 5,676,500 ('500) and 6,481,937

15 ('937) are prior art; Park admits that these two patents are prior art and that the '500 patent

16 discloses and describes at least as much as the Rocket jig and that the '937 patent discloses and

17 describes at least as much as the K2000 physical device.  Therefore, the physical devices are

18 cumulative.

19      Fourth, Park admits that the Raines Patent No. 4,842,453 is prior art.

20      Fifth, Kreg Tool contends that the DB50 is prior art to Claim 5 of the '373 patent.

21 **Authorities:**

22 *Deering v. Winona Harvester Works,* 155 U.S. 286, 300-301, 15 S.Ct. 118, 123-24 (1894); *Eibel*

23 *Process Co. v. Minnesota & Ontario Paper Co.,* 261 U.S. 45, 60, 43 S.Ct. 322, 327 (1923);

24 *Woodland Trust v Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371 (Fed. Cir. 1998); *Finnigan*

25 *Corp. v. Int'l. Trade Comm'n.,* 180 F3d 1354, 1369 (Fed. Cir. 1999); *Juicy Whip, Inc. v. Orange*

26 *Bang, Inc.,* 292 F.3d 728, 741 (Fed. Cir. 2002); *Washburn & Moen Manuf'g. Co. v. Beat 'em all*

27 *Barbed-Wire Co.*, 143 U.S. 275, 284-85, 12 S.Ct. 443, 448 (1892)

28 \_\_\_\_\_ Given      \_\_\_\_\_ Modified      \_\_\_\_\_ Denied

1

**FINAL INSTRUCTION NO. _**

2

**SCOPE AND CONTENT OF THE PRIOR ART**

3        The prior art that you considered previously for anticipation purposes is also prior art for

4   obviousness purposes; if it is not prior art for anticipation purposes it is not prior art for

5   obviousness purposes. The prior art includes the following items received into evidence during the

6   trial:

7        1.        Kreg Tool's K2000 pocket hole jig (U.S. Patent No. 6,481,937)

8        2.        Kreg Tool's A2H/A2F adaptor and Kreg Tool's A2H pocket hole jig

9        3.        U.S. Patent No. 4,842,453 to Raines

10        4.        Kreg Tool's Rocket pocket hole jig (U.S. Patent No. 5,676,500)

11        You must determine what is the prior art that may be considered in determining whether

12   any claim in the '988 and '814 patents is obvious. A prior art reference may be considered if it

13   discloses information designed to solve the same problem(s) faced by the inventor(s) or if the

14   reference discloses information that has obvious uses beyond its main purpose that a person of

15   ordinary skill in the art would reasonably examine to solve the same problem(s) faced by the

16   inventor(s).

17        Kreg Tool contends that claims 1, 12 and 20 of the '988 patent, claims 1, 2, 4, 5, 6, 9, 10

18   and 11 of the '814 patent, and claim 5 of the '373 patent are obvious for the following reasons:

19        1.        Kreg Tool's K2000 pocket hole jig (U.S. Patent No. 6,481,937) and the A2H/A2F

20                  adaptor or U.S. Patent No. 4,842,453 to Raines renders claims 1, 12 and 20 of the

21                  '988 patent unpatentable as obvious under 35 U.S.C. § 103.

22        2.        Kreg Tool's K2000 pocket hole jig (U.S. Patent No. 6,481,937) and the A2H/A2F

23                  adaptor and U.S. Patent No. 4,842,453 to Raines, and Kreg Tool's Rocket pocket

24                  hole jig (U.S. Patent No. 5,676,500) renders claims 1, 2, 4, 5, 6, 9, 10 and 11 of the

25                  '814 patent unpatentable as obvious under 35 U.S.C. § 103.

26

27   **Authorities:**

28   AIPLA Model Jury Inst. 7.1 (2008) (modified)

1  *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d

2  654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 864 (Fed. Cir.

3  1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37

4  (C.C.P.A. 1979).

5  _____ Given        _____ Modified        _____ Denied

1

2

**FINAL INSTRUCTION NO. __**

**LEVEL OF ORDINARY SKILL**

3   The determination of whether a claimed invention is obvious is based on the perspective

4   of a person of ordinary skill in the woodworking tools.  The person of ordinary skill is presumed

5   to know all prior art that you have determined to be reasonably relevant.  The person of ordinary

6   skill is also a person of ordinary creativity that can use common sense to solve problems.

7   Several times, in my instructions, I have referred to a person of ordinary skill in the field

8   of woodworking. It is up to you to decide the level of ordinary skill in the field of woodworking.

9   When determining the level of ordinary skill in the art, you should consider all the

10   evidence introduced at trial in making this decision, including underline evidence of:

11   1.   the level of education and experience of persons actively working in the field at the

12       time of the invention, including the inventor;

13   2.   the types of problems encountered in the art at the time of the invention; and

14   3.   the sophistication of the technology in the art at the time of the invention, including

15       the rapidity with which innovations were made in the art at the time of the

16       invention.

17   Kreg Tool contends that the level of ordinary skill in the field is a person with more than 5

18   years experience in the design, manufacture, sale and use of woodworking tools.

19   Park contends that the level of ordinary skill in the field is a person with more than 5 years

20   experience in the design, manufacture, sale or use of woodworking tools.

21

22

23   **Authorities:**

24   AIPLA Model Jury Inst. 7.3 (2008) (modified)

25   *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383

26   U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl*

27   *Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983).

28   _____ Given          _____ Modified          _____ Denied

**FINAL INSTRUCTION NO. _**

**DAMAGES -- BURDEN OF PROOF**

I will instruct you about the measure of damages.  In instructing you on damages, I am not suggesting which party should win on any issue; the instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Park.  If you find that Kreg Tool has infringed any valid claim of either the '988 or '814 patents, then you must then determine the amount of money damages to be awarded to Park to compensate him for the infringement.  In this case, Park seeks damages based on a reasonable royalty.

Park has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty.  Reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to Park's right to recover.  You may base your evaluation of reasonable certainty on opinion evidence.

The amount of those damages must be adequate to compensate Park for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

**Authorities:**

N.D. Calif. Model Patent Jury Inst. B.5.1 (11/29/07)

*Lucent v. Gateway*, 509 F.Supp.2d 912, 935-38 (S.D. Cal. 2007), *aff'd.*, 580 F.3d at 1325, 1327 (Fed. Cir. 2009) (Jury instructions, 2007 WL 906141 (S.D. Cal. 2007)); *Unisplay S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544, 1545 (Fed. Cir. 1995) (*en banc*).

\_\_\_\_\_ Given          \_\_\_\_\_ Modified          \_\_\_\_\_ Denied

1

2

**FINAL INSTRUCTION NO. _**

**REASONABLE ROYALTY -- CONVOYED SALES**

3      In this case, Park contends that the Model K3 jig is ordinarily sold with collateral products

4   including pocket hole drilling screws, pocket hole drilling clamps and pocket hole plugs, at the

5   same time or after the K3 jig is in use.  Park contends that the reasonable royalty rate for

6   infringing sales of the K3 jig should be increased based on sales and profit of such collateral

7   products.  In order to warrant an increase in the royalty rate, Park must prove two things.  First,

8   that it is more likely than not that Kreg Tool would not have sold the collateral products but for

9   the sale of the Model K3 infringing jig.  Second, the collateral products and the K3 jig must

10   constitute a single functional unit; or if as separate, must function together to achieve one result, a

11   pocket hole joint.

12

13

14

15

16

17   **Authorities:**

18   AIPLA Model Jury Inst. 12.12 (2008)

19   *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001); *Juicy*

20   *Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1372-73 (Fed. Cir. 2004); *Aro Mfg. Co. v.*

21   *Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Rite-Hite Corp. v. Kelley Co.*, 56

22   F.3d 1538, 1549-51 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573,

23   1580 (Fed. Cir. 1989); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656

24   (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22-23

25   (Fed. Cir. 1984).

26   _____ Given

27   _____ Modified

28   _____ Denied

**FINAL INSTRUCTION NO. __**

**DAMAGES -- REASONABLE ROYALTY - DEFINITION**

A royalty is a payment made to a patent holder (Park) in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a hypothetical arm's length negotiation between Park and Kreg Tool taking place at the time when the infringing sales first began and with both parties operating under the assumption that the patent is valid and infringed. In considering the nature of this negotiation, the focus is on what the expectations of Park and Kreg Tool would have been had they entered into an agreement at that time and acted reasonably in their negotiations. In addition, you must assume that the persons negotiating on behalf of Park and Kreg Tool were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred. Finally, you must assume that both Park and Kreg Tool know all pertinent information (not including subsequent facts) at the time of the negotiation.

**Authorities:**

N.D. Calif. Model Patent Jury Inst. B.5.7 (11/29/07) (modified - underlined)

*Lucent v. Gateway*, 509 F.Supp.2d 912, 935-38 (S.D. Cal. 2007), *aff'd.*, 580 F.3d at 1325, 1327 (Fed. Cir. 2009) (Jury instructions, 2007 WL 906141 (S.D. Cal. 2007)).

_____ Given

_____ Modified

_____ Denied

PLAINTIFF JURY INSTRUCTIONS                    08 CV 00385 DMS (NLS) - Page 28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. _**

**LACHES**

Kreg Tool contends that Park is not entitled to recover damages for acts that occurred before it filed a lawsuit because: (1) Park delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) Kreg Tool has been or will be prejudiced in a significant way due to Park's delay in filing the lawsuit. This is referred to as laches. Kreg Tool must prove delay and prejudice by a preponderance of the evidence.

In this case, the delay in filing is from April 2007 and February 2008, or approximately 10 months.  Whether Park's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches, although in general delays of less then one year are not unreasonable or inexcusable. If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. This presumption shifts the burden of proof to Park to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if Park presents such evidence, the burden of proving laches remains with Kreg Tool. Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to Kreg Tool. Facts and circumstances that can justify a long delay can include:

(1)     being involved in other litigation during the period of delay;

(2)     being involved in negotiations with Kreg Tool during the period of delay;

(3)     poverty or illness during the period of delay;

(4)     wartime conditions during the period of delay;

(5)     being involved in a dispute about ownership of the patent during the period of delay; or

(6)     minimal amounts of allegedly infringing activity by Kreg Tool during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also

determine if Kreg Tool suffered material prejudice as a result of the delay. Prejudice to Kreg Tool can be evidentiary or economic. Whether Kreg Tool suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in Kreg Tool not being able to present a full and fair defense on the merits to Park's infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not Kreg Tool changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if Kreg Tool could have switched to a noninfringing product if sued earlier), and also whether Kreg Tool's losses as a result of that change in economic position likely would have been avoided if Park had filed this lawsuit sooner. In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice). You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

**Authorities:**

The Federal Circuit Bar Association Model Patent Jury Instructions, February 18, 2010

35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773-74 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) (en banc); *Cooperative Regionale de Vins de Champagne v. Chatam Intern. Inc.*, 1987 WL 123927 (S.D.N.Y.); *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir. 2960).

_____ Given

_____ Modified

_____ Denied

Dated this 19th day of July, 2010.

Respectfully submitted,

THE ADAMS LAW FIRM

By    s: *Paul Adams*
            Paul Adams, (Bar No. 42,146)
            550 West C Street, Suite 2000
            San Diego, California 92101
            Telephone: 619-241-4810
            Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 19, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Frank S. Farrell, admitted *pro hac*
F.S. FARRELL, LLC
7101 York Avenue South, Suite 153
Edina, MN 55435
Telephone: 952-921-3260
Facsimile: 952-216-0106
frank@fsfarrell.com

John L. Haller
Charles V. Berwanger
Matthew G. Kleiner
Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101
ihaller@gordonrees.com

Timothy J. Zarley, admitted *pro hac*
Zarley Law Firm, PLC
400 Locust Street
Capital Square, Suite 200
Des Moines, IA 50309-2350
tzarley@zarleylaw.com

            s: *Paul Adams*
            Paul Adams